## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE:

LEO J. SCHWARTZ
SHARON J. SCHWARTZ

                Debtors.

_____

                Case No. 08-1183-EFM

FRONTIER FARM CREDIT,

                Plaintiff/Appellant,

  vs.

LEO J. SCHWARTZ and
SHARON J. SCHWARTZ,

                Defendants/Appellees.

## MEMORANDUM AND ORDER

Before this Court is an appeal from the United States Bankruptcy Court for the District of

Kansas, Case No. 03-16197, in which the Bankruptcy Court entered judgment in favor of the

defendants, Leo Schwarz and Sharon Schwartz, and against plaintiff Frontier Farm Credit ("FFC").

On appeal, FFC contends that the Bankruptcy Court erroneously: (1) failed to address the legal issue

of its power with respect to property not dealt with in the Chapter 11 plan due to intentional

omission of the property, (2) considered a revocation of discharge to be the only remedy available

to FFC in this case, (3) failed to acknowledge a presumption of fraud in this case, (4) ruled on the

determination of damages, and (5) failed to consider judicial estoppel.  For the following reasons,

the Court AFFIRMS the judgment of the Bankruptcy Court.

## I.  Background

The factual and procedural background of this case is extensive and has been described by

the Bankruptcy Court in detail.  After a thorough review of the record, this Court finds the

Bankruptcy Court's factual and procedural findings to be accurate and supported by the record, and

accordingly, adopts its summary:[1]

**Factual Background.**

On April 18, 1992, Mary Kay Schwartz deeded two quarter-sections of farm
ground and three town lots in Hanover, Kansas to her six children, one of whom is
debtor and defendant Leo Schwartz. She retained a life estate. Her warranty deed was
recorded December 28, 1992. Mary's home was located on the Hanover lots. Leo and
his wife, Sharon Schwartz, filed their chapter 11 case on November 12, 2003. They
failed to schedule Leo's one-sixth remainder interest in the real estate in the
schedules they filed on January 2, 2004 and made no subsequent amendments to
those schedules. Nor did they reference the remainder interest in their disclosure
statement filed on November 8, 2004. Ultimately, their plan was confirmed on
August 15, 2005, again without any reference to the remainder interest. FFC filed its
original proof of claim in the amount of $1,116,293.30. FFC held no lien on the
undisclosed real estate or Leo's remainder interest. Mary Schwartz died on October
9, 2005.

After Mary died, FFC learned of the omitted remainder interest held by Leo.
On November 9, 2005, FFC filed a "Motion to Require Sale of Assets" in the main
bankruptcy case seeking an order requiring that Leo's interest in the land (by now
ripened to an undivided one-sixth fee interest) be sold. In responding to this motion,
Leo asserted that "on the date of the filing of the bankruptcy, the debtor had no
knowledge of the "warranty deed" [from Mary]." He acknowledged that the warranty
deed on its face was subject to a life estate in Mary. Leo also denied that he had an
"actual interest" in the land and that any interest to which he succeeded as a result
of Mary's death was acquired more than 180 days after the filing date and therefore
not included in the bankruptcy estate by virtue of § 541(a)(5). Subsequently
developed evidence in this matter suggests that Leo's statements in his response were
at best incorrect.

On August 17, 2004, well after Leo signed his bankruptcy schedules under

---

[1]*In re Schwartz*, No. 03-16197, 2008 WL 2397712, at *2-7 (Bankr. D. Kan., 2008)(internal citations omitted).

oath and only ten weeks before he filed his disclosure statement, Leo and his 5 siblings, along with their mother, sold the Hanover lots with Mary's home for $75,000. Leo and Sharon signed the sales contract as sellers and owners of the lots. Leo also executed the deed as a seller conveying the Hanover lots to the buyers and the settlement statement for the transaction. According to Leo's testimony and that of two of his brothers, Mary wanted her children to have the proceeds of the sale and, accordingly directed the title company to make checks to each child for one-sixth of the net proceeds of the sale. Leo received $11,984 that day. Despite being a chapter 11 debtor in possession, Leo did not disclose the receipt of these funds on his August monthly report. In fact, Leo did not file a monthly report for that month. Not until February 16, 2005 did Leo deposit the check and, when he did, he placed these funds in an account at Tier One Bank in Marysville, Kansas, not the debtor-in-possession account.

Thomas Schwartz is Leo's brother and managed some of Mary's affairs. He stated that he was aware of the 1992 deed when Mary made it and that his siblings were, too. [This belies certain comments made by Leo's counsel during the course of these proceedings.] He testified that when Mary decided to sell her home in 2004, she asked him to make the arrangements. He also received cash at the August closing, but stated that all of the siblings decided to wait to cash their checks in case their mother needed the money. Thomas cashed his check when his mother died in October of 2005. According to Thomas, the two quarter sections are farmed by a cousin, Harold Schwartz, and have been since the mid-1990's. Harold pays cash rent to an entity called Schwartz Family Farm Partnership, consisting of Leo and his siblings. Leo received a distribution of $2,012 from this partnership in March of 2007.

Thomas' testimony was corroborated by that of another brother, Larry, except that Larry denied being aware of the deed when it was given in 1992. He says he became aware of the 1992 deed in 2000 when his mother became ill. Like Leo and Thomas, Larry received his share of the proceeds from the sale of Mary's home place and held onto it for some period of time.

With regard to the 1992 deed, Leo did not recall seeing it before his mother died in 2005 but when pressed, he admitted that he knew about it, to the extent that he knew that his mother had a life estate in the land and was in sole possession of the land. He claimed that he "did not own" the real estate interest. He stated that he listed everything they "physically owned." As to why he omitted the remainder from his schedules, Leo stated that "we reported what we have," meaning what he held in his possession. He did not think this land had anything to do with the case. Leo also stated that he thought he had no ownership interest in the land until his mother died and therefore did not schedule the real estate interest on his bankruptcy filing.

With respect to the sale of Mary's house in Hanover in August of 2004, Leo admitted that he was one of the sellers of this property. He denied receiving the sale proceeds check on August 17, 2004 but could not specifically recall when he did receive it other than that he received it before Mary's death in 2005. Leo stated that

when Mary directed the money to him and his siblings, he was surprised. He did state that he deposited the check at Tier One Bank in Marysville in February 2005 to keep it separate from his own holdings. As noted above, Leo testified that he did not report the funds because he felt they had nothing to do with the bankruptcy. He also excused this omission by stating that he does not do the paperwork for his business.

Co-debtor Sharon Schwartz testified that she first learned of the existence of the 1992 deed in August of 2004 when the homestead was sold. On cross-examination, she changed her testimony to indicate that she was unaware of the 1992 deed until after Leo's mother died. She stated that she was at the closing, but did not see Leo's check delivered to him. Closing agent Janeen Bruna of the Washington County Abstract Company testified that she delivered the check to Leo at the closing. Sharon conceded that she was aware of the deed and the check by the time they filed their disclosure statement in November of 2004 but did not disclose them. Sharon also conceded that she neither reported the deed nor the check to the Court in any fashion. She also admitted that even when the check was deposited in February of 2005, it was not mentioned on the monthly reports. Nothing in the record reflects the degree and extent to which Sharon was involved in the preparation of the schedules and statement of affairs. Nor was there any evidence that Sharon wittingly participated in the decision to include or omit the remainder interest.

FFC's only witness was its in-house appraiser, Ray Shinn. He described his calculations and methodology in arriving at a value for the debtors' one-sixth undivided interest in the two quarters on August 15, 2005, the date of confirmation. Shinn gave no testimony whatever concerning FFC's reliance on what the Schwartz schedules disclosed, nor did he comment in any respect on FFC's approach to the bankruptcy case, debtors' chapter 11 plan, or the underlying debt. He testified that the two quarters had a gross value of $339,700, but that he discounted that value back to $264,000 because of the existence of Mary's life estate in 2005.  He concluded that Leo's share of the remainder interest in the land had a value of one-sixth of $264,000 or $44,000. Shinn further discounted Leo's interest by fifteen percent for the partial undivided ownership interest to arrive at a final value for Leo's one-sixth remainder interest of $37,400.

The Schwartzes' plan is a joint plan, filed with their wholly-owned entity, Pork Chop Acres, L.L.C. Pork Chop is the Schwartz's hog farm operation. Their plan contemplated a transfer to Schwartz Family Farms, LLC (SFF) of "all of the assets of Pork Chop Acres, Inc. and all nonexempt assets of the debtors Leo and Sharon Schwartz." The plan included a lengthy treatment of FFC's various secured claims and provided for the balance of FFC's claims to be treated as unsecured. Unsecured creditors were to receive a pro rata distribution of an amount equal to 50 per cent of the net profit of SFF from January 1, 2005 until December 31, 2007. FFC hotly contested the confirmation of debtors' plan, but an agreed resolution of the treatment of its claims is embodied in the Order on Confirmation entered on August 15, 2005.

**Procedural Background.**

FFC filed this adversary proceeding on August 14, 2006, but this is only the latest of FFC's efforts to seek redress for Leo's failure to disclose the transferred land. Some discussion of FFC's course of action in this matter is necessary to place its complaint and the Court's ruling in legal context.

FFC first filed a motion in the main case on November 9, 2005, some three months after confirmation and well-within the 180 days allotted to revoke a chapter 11 confirmation order under 11 U.S.C. § 1144, seeking an order from the Court requiring debtor to sell his undisclosed interest in the land ("the Sale Motion"). FFC cited no legal authority for the Court to compel debtor to sell the land. Debtors objected to the motion, contending that debtors' plan discharged debtors from this claim pursuant to the order confirming plan and § 1141(d)(1)(A). In their objection, debtors represented that they had no knowledge of the existence of the warranty deed on the date of the petition. The Sale Motion was set over to a scheduling conference on March 16, 2006 and an evidentiary hearing on June 14, 2006.

At the scheduling conference the Court inquired of FFC's counsel whether it was seeking to revoke confirmation. FFC's counsel stated that "[i]f that's the only remedy we have then certainly that's the remedy we're seeking to pursue."  At the close of the scheduling conference the Court advised counsel that it would proceed with an evidentiary hearing, treating the Sale Motion as one for the sale of assets, as pled by FFC. The Court specifically advised counsel that he would need to amend his Sale Motion if FFC was pursuing some other remedy. The Court notes here, as it has in prior rulings in this matter, that an action to revoke a chapter 11 confirmation order must be filed as an adversary proceeding.

FFC did not amend its Sale Motion nor did it file a complaint for revocation of confirmation. The Court attempted to clarify what cause of action FFC was pursuing at the opening of the evidentiary hearing in this exchange with counsel for FFC:

> THE COURT: You're not asserting that the confirmation of this plan should be revoked for fraud are you?

> MS. CARSON: No Your Honor, but we are saying that the Court retains jurisdiction to order the Debtor to either sell this property or modify the plan to address the value of this property in some way.

After receipt of documentary evidence only and hearing oral arguments from counsel, the record was closed and the Court took the matter under advisement. While the matter was under advisement, FFC filed an unsolicited supplemental brief, to which the debtors responded, and a reply. In its supplemental brief, and in direct contradiction of its counsel's statement at the hearing, FFC demanded revocation of confirmation or discharge for fraud.  This is the first reference to such a request made by FFC in a pleading.

On July 31, 2006, the Court issued an order denying the Sale Motion. In that order, the Court stated that there was no legal authority that would authorize it to

order a sale of the property after entry of confirmation. The Court further concluded that FFC's subsequent request to revoke confirmation under § 1144, made in its supplemental brief and filed long after 180 days after the confirmation order's entry, was not timely, nor was it properly invoked.

FFC then commenced this adversary proceeding. In its initial complaint, FFC sought to revoke the debtors' discharge for fraud, not under § 1144, but instead under §§ 727(d)(1) and (d)(2). Debtors moved to dismiss the first complaint for failure to state a claim upon which relief could be granted, arguing the obvious point that § 727 does not apply to a Chapter 11 case and that the complaint for revocation of confirmation under § 1144 was untimely brought. In its response, FFC conceded the obvious, that its revocation action was untimely, but now asserted that it could maintain an independent action for fraud for nondisclosure of assets, based upon its allegedly new discovery that debtor had participated in the sale of Mary's homestead on August 17, 2004 (receiving $11,948.72 of the sale proceeds), part of the property in which debtor purportedly unwittingly held a remainder interest. Abandoning its revocation claim, FFC now asserted that a money judgment remedy was appropriate, even though it had not requested that remedy in the complaint. On February 13, 2007, the Court entered an order dismissing the complaint as to revocation, but granting leave to FFC to amend its complaint to plead with more particularity an independent action for fraud and its prayer for relief. FCC filed its amended complaint to assert its independent fraud action on February 22, 2007.

The Court conducted a trial on this fraud claim on January 22, 2008 and after receiving posttrial submissions from the parties, the case was taken under advisement.

On June 10, 2008, the Bankruptcy Court for the District of Kansas issued a Memorandum and Order finding that FFC failed to prove a case of fraud by silence against Leo and Sharon Schwarz. Specifically, FFC was not able to show that it relied on the nondisclosure of assets by the debtors to its detriment or that it suffered any damages because of the omission. On June 20, 2008, FFC filed an appeal urging this Court to reverse the Bankruptcy Court's order.

## II. Standard of Review

The District Court sits as an appellate court on an appeal from the Bankruptcy Court. Factual findings are reviewed for clear error, conclusions of law are reviewed *de novo*.[2] The district court may affirm, modify, or reverse a judgement of the Bankruptcy Court or remand with instructions

---

[2]*Zions First Nat'l Bank, N.A. v. Christiansen Brother, Inc.*, 66 F.3d 1560, 1563 (10th Cir. 1995).

for further proceedings.[3]

## III.  Analysis

**A. *Whether the Bankruptcy Court erred in failing to address the legal issue of the court's power with respect to property not dealt with in the Chapter 11 plan due to its intentional omission.***

FFC succinctly frames the issue at hand as "the legal effect of failure to disclose."[4] Whether

the Bankruptcy Court failed to address this issue turns on how FFC presented the issue to the court.

If this issue should be examined relative to the theory of fraud by silence, then a discussion of the

elements of fraud by silence will suffice in addressing it. However, if in its zealous pursuit of an

equitable remedy FFC has concocted another legal theory of relief, wholly separate from fraud, that

theory is outside the bounds of the pretrial order and therefore not before the court.  We turn first

to whether or not the issue must be examined relative to the theory of fraud.

The pretrial order laid out FFC's theory of recovery as being a "theory of fraud"[5] and that

all issues of law must be resolved relative to that theory.[6] It is true, as appellant points out, that

"pre-trial orders have been construed to include issues not specifically mentioned in the order,"[7] and

---

[3]Fed. R. Bankr. P. 8013.

[4]Doc. 6, p. 17-18

[5]7.4 Plaintiff's first theory of recovery:
    A. Elements: In order to prevail *on the theory of fraud*, plaintiff must prove:
    [The elements of fraud are listed, including reliance and damages.]. . . .
    B. Issues of fact: [Text omitted.]
    C. Issues of law: The following issues of law *relative to the above elements of the above referenced theory of recovery* must be resolved at trial:
        1. *Whether undisclosed property not dealt with by the plan is subject to claims of pre-confirmation creditors?*
  Doc. 2-24, p. 28 (emphasis added).

[6]*Id.*

[7]*Lurch v. United States.*, 719 F.2d 333, 339 (10th Cir. 1983).

that they, "should be "liberally construed to cover any of the legal or factual theories that might be

embraced by their language."[8] However, it is also true that, "the purpose of a pretrial order is to

narrow the issues and thereby streamline litigation, and prevent surprise. To fulfill this purpose, a

pretrial order that sufficiently defines the issues will generally control the lawsuit both at trial and

on appeal."[9]

The language of this pretrial order clearly states that the issue of "whether undisclosed

property not dealt with by the plan is subject to the claims of pre-confirmation creditors"[10] must be

resolved relative to the theory of fraud.  The language of the pretrial order simply does not embrace

a theory of recovery that exists outside of the bounds of fraud. The issue must be addressed relative

to the presented theory of fraud.

Next we turn to whether the Bankruptcy Court adequately addressed the "legal effects of

failure to disclose" relative to fraud. In its decision, the court addressed all of the elements of fraud

by silence, particularly focusing on reliance and damages. These two elements specifically concern

the legal effects of a failure to disclose as it relates to fraud.  Reliance involves the effects of fraud

on decision-making and damages involve the effects of fraud on FFC. The court, analyzing these

issues,  found that FFC did not provide adequate evidence to show that it justifiably relied on Leo

Schwartz's failure to disclose or that FFC consequently sustained damages.

After careful review of the record we find that the Bankruptcy Court's analysis of fraud by

silence to be more than sufficient in addressing the legal effects of the failure to disclose. FFC is

asking this Court to fashion an equitable remedy, not presented in the pretrial order, based on the

---

[8]*Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979).

[9]*Id.*

[10]Doc. 2-24, p. 28.

fact that FCC met some of its burden, but not all of it.

**B.** *Whether revocation of discharge is the only remedy available to creditors for debtors'*

*fraudulent omission of information in the bankruptcy schedules and disclosure statements.*

FFC claims that the Bankruptcy Court failed to consider any remedy other than the

revocation of the Schwartz's Chapter 11 confirmation plan. In its reasonable frustration with FFC,

the Bankruptcy Court declared that it "cannot excuse FFC's failure to bring a properly and timely

filed action for revocation of Schwartz's confirmation, the most effective, if not the only remedy for

the debtor's wrongdoing."[11] However, FFC is wrong to claim that the court never actually

entertained the fraud claim before it.

The court followed their previous statement with the declaration that "this controversy now

centers on whether the debtors defrauded FFC under Kansas law by their series of omissions in this

case."[12]  The court goes on to explain that FFC's failure to timely pursue revocation of confirmation

"left FFC with only an independent action for fraud to seek redress from debtor's omissions."[13] A

successful claim for fraud would have provided a remedy for FFC.

The Bankruptcy Court conducted a thorough analysis of the elements of fraud by silence.

After reviewing the record, we find that the Bankruptcy Court did not consider revocation of

discharge to be the only remedy available to the appellants. Rather, if the appellants had proved their

case, a remedy would have been available to them.  The court would not have entertained an action

for fraud if there was no potential for a remedy.  FFC's failure to provide adequate evidence to

---

[11]*In re Schwartz*, No. 03-16197, 2008 WL 2397712, at *12 (Bankr. D. Kan., 2008).

[12]*Id.*

[13]*Id.* at n. 34.

support their theory is not the same as the court failing to consider the theory altogether.

**C. *Whether there is a presumption of fraud when there is an omission of material fact by debtors in bankruptcy schedules and in the disclosure statement.***

FFC claims that the although the Bankruptcy Court acknowledged that FFC was pursuing a theory of constructive fraud,  the court failed to recognize the presumption of fraud as an element of a constructive fraud theory.  The Bankruptcy Court did refer to FFC's theory of recovery as a "constructive fraud claim".[14]  However, the actual theory was always, from complaint to pretrial order to decision, a theory of fraud by silence, and therefore a presumption of fraud is inapplicable in this case.[15]

When fraud is pleaded, there must be a specific statement of facts constituting the alleged fraud.[16] In neither the complaint nor the pretrial order is there a single mention of "fiduciary duties" or "presumption of fraud", terms that would be expected if FFC was pleading a constructive fraud theory. We find that the facts presented for proof in the pretrial order lay out only a theory of fraud by silence[17] In its opinion, the Bankruptcy Court laid out the elements of fraud by silence and

---

[14]*Id.* at 15.

[15]Doc. 2-22 p. 3; Doc. 2-24, p.5*; In re Schwartz.* at *12.

[16]*In re Estate of Latshaw*, 194 Kan. 747, 751, 402 P.2d 323, 327 (1965).

[17][T]o prevail on the theory of fraud, plaintiff must prove:
[1-8 omitted]
9. Debtors' failure to disclose this property was known to be untrue, was made with the *intent to deceive or with reckless disregard* to the truth.
10. [FFC] and the other unsecured creditors *justifiably relied* to their detriment on the nondisclosure of this asset.
11. [FFC] and other unsecured creditors *suffered damages* as a result of this nondisclosure.
Doc. 2-24, p. 5 (emphasis added).

addressed each in turn.[18] We find, after careful review of the record that the case at hand concerned

fraud by silence, not constructive fraud, and that the Bankruptcy Court considered the appropriate

legal elements.  A presumption of fraud based on fiduciary duties was not one of them.

> **D.** *Whether creditors established damages as a result of the debtors' fraudulent omission of assets.*

FCC's argument for damages is based on the notion that since the omitted property was not

included in the plan, it is not safe from unsecured creditors and therefore should be liquidated and

distributed to the creditors. However, FFC's interest in the plan is based only on the income

generated by Schwartz through the plan's administration. Its potential damages in this fraud action

are limited to what it lost as a result of the plan being administered without the omitted property.

The Bankruptcy Court determined that FFC failed to prove that it suffered any real damages

as a result of the plan being administered without the omitted assets.  Further, the court found that

even if the value of damages equaled FCC's share of the liquidated assets, that administrative fees

would swallow the entire amount and there would be no real recovery.  As these are factual findings,

this Court reviews the Bankruptcy Court's findings for clear error.  After careful review of the

evidence presented by both sides, we find that there was no clear error in the Bankruptcy Court's

determination of damages and we uphold the judgement of the court.

> **E.** *Whether the court erred in failing to find that debtors should be judicially estopped from*

---

[18]To prove debtors' fraud by silence, FFC must show by clear and convincing evidence that:
(1) debtors had knowledge of the remainder interest that FFC did not have and which FFC could not
have discovered by the exercise of reasonable diligence; (2) debtors were obligated to communicate
that interest to the Court and creditors; (3) debtors intentionally failed to disclose the interest; (4) FFC
justifiably relied on debtors to disclose the remainder interest; and (5) FFC sustained damages as a
result of debtors' nondisclosure.
*In re Schwartz* at *12.

*benefitting from their own wrongdoing.*

In its brief, appellant argues that the court "completely ignores this argument without so much as a mention in its decision."[19] After reviewing the record we find good reason for the Bankruptcy Court to ignore this issue: it was never made in appellant's complaint, nor was it included in the pretrial order. However, we look at the elements of judicial estoppel to illustrate that it does not apply in this situation.

Rule 16(e) of the Federal Rules of Civil Procedure states that the pretrial order "shall control the subsequent course of the action unless modified by a subsequent order." The effect of this rule is to "replace the old sporting theory of justice with a policy of putting the cards on the table."[20] At the pretrial conference attorneys must disclose "their views as to what the real issues of the trial will be."[21] Accordingly, the 10th Circuit has held that issues not contained in the pretrial order are not part of the case before the court.[22]

We find that the Bankruptcy Court properly ignored issues that weren't included in the pretrial order.

However, even if judicial estoppel had been properly brought before the court, it cannot be applied in this situation. Judicial estoppel is the legal principle that "where a party assumes a certain

---

[19]Doc. 6, p. 35.

[20]*Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002) (quotations omitted) (citing *Clark v. Penn. R.R. Co.*, 328 F.2d 591, 594 (2d Cir.1964)).

[21]*Youren v. Tintic School Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003).

[22]*Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived....").

position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."[23]   There are three distinct elements to judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position .... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."[24]

Judicial estoppel is meant to prohibit parties from changing their position during legal proceedings when the court previously relied on the position and a change would be destructive to the integrity of the court.  Though this doctrine has been used in Chapter 7 bankruptcy cases to preclude debtors from pursuing affirmative claims that were intentionally omitted from their bankruptcy plans[25], that is not the case here. The Schwarzes' are making no affirmative claim and this doctrine cannot be stretched so far as to call for the court to seize property from a debtor, after confirmation of the debtor's Chapter 11  bankruptcy plan, and distribute it to the unsecured creditors.

Even if we applied this doctrine to the case at hand, we find that the Schwarzes are not taknig a position that is clearly inconsistent with an earlier position that the court relied on. FCC does not state what they believe the previous position of the debtors to be, but does claim that the Schwartzes

---

[23]*Davis v. Wakelee,*  156 U.S. 680, 689 (1895).

[24]*New Hampshire v. Maine,*  532 U.S. 742, 750-751 (2001).

[25]*See e.g., Eastman v. Union Pacific R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007).

-13-

"now take the inconsistent position that they should be entitled to retain assets they covered-up."[26] However, the Schwartzes' did not take the previous position that they were not entitled to assets they omitted, but rather they took the position that they did not think that those assets should be included in the bankruptcy proceeding. This position is not clearly inconsistent with the present position that they are entitled to retain ownership of the omitted assets.

We find that the doctrine of judicial estoppel was not appropriately put before the court for determination. We find that even if it was before the court, it would not apply. Finally, even if it applied, the first element fails to be satisfied.

In summary, we find, after thorough and careful review of the record, that the Bankruptcy Court did not fail to address any legal issues or elements of the action for fraud by silence. Further, the court did not fail to consider all theories of recovery that were laid out in the pretrial order. We also find that the court did not make clear errors in its determination of applicable damages.

Accordingly,

**IT IS THEREFORE ORDERED** that the bankruptcy court's June 10, 2008 Order is hereby AFFIRMED.

**IT IS SO ORDERED.**

---

[26]Doc. 6, p. 28.

Dated this 20th day of May, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE